Judge Paula A. Brown
This is a criminal appeal. Defendant, Marcus O. Cretian seeks review of his conviction of resisting a police officer with force, and his habitual offender sentence of seven years at hard labor. For the reasons set forth below, Defendant's conviction and sentence are conditionally affirmed, and the matter is remanded to the district court for an evidentiary hearing for a determination of whether reasonable grounds exist to doubt Defendant's mental capacity and to warrant the appointment of a sanity commission.
PROCEDURAL HISTORY
On April 14, 2016, Defendant was charged by bill of information with one count of resisting a police officer with force, a violation of La. R.S. 14:108.2, and one count of possession of drug paraphernalia, a violation of La. R.S. 40:1023.
The State offered Defendant a plea bargain agreement on June 22, 2016-a sentence of two years and the State would not seek enhancement of the sentence under the habitual offender statute. Defendant rejected the offer. Prior to trial, on July 11, 2016, the State filed a motion in limine seeking to prohibit Defendant from referring, during the trial, to his possible sentencing exposure for the crime and under the habitual offender statute. The district court granted the motion.
On July 27, 2016, a six-person jury found Defendant guilty of resisting a police officer with force, but acquitted him of the charge of possession of drug paraphernalia.
*475 Subsequently, on July 28, 2016, the State filed a habitual offender bill charging Defendant as a third felony offender.[2] A sentencing hearing was held on
August 23, 2016, and the district court sentenced Defendant to eighteen months at hard labor. At the same proceeding, Defendant entered a plea of guilty as a third felony offender in exchange for a sentence of seven years at hard labor, which was below the penalty provided for under the habitual offender statute. During the proceeding, Defendant's attorney raised the question of Defendant's mental capacity, but did not assert Defendant did not understand that he was to entering a guilty plea or motion the court for the appointment of a sanity commission. The district court accepted Defendant's plea as an habitual offender, vacated Defendant's previous sentence, and sentenced him to seven years at hard labor, with credit for time served to run concurrent with any other sentence.[3]
Defendant filed a written motion entitled "Application for Appointment of Sanity Commission to Examine Defendant and to Report on Mental Condition at the Time of the Alleged Offense, and for a Hearing as to his Present Capacity to Proceed" ("motion seeking appointment of sanity commission") that was date-stamped October 4, 2016, by the clerk of court's office.
On January 19, 2017, Defendant orally sought an appeal, and on February 22, 2017, a written motion for appeal was filed and granted the same day.
More than four months after the filing of the motion seeking appointment of sanity commission and more than one month after the filing of the motion for appeal, on March 30, 2017, a hearing on Defendant's motion seeking appointment of sanity commission was held. The district court denied Defendant's motion.
This appeal followed.
FACTS
Louisiana State Trooper Alex Nezgoginsky ("Trooper Nezgoginsky"), a fifteen-year law enforcement veteran, was assigned to the French Quarter Task Force. On February 22, 2016, Trooper Nezgoginsky participated in the arrest of Defendant in the 800 block of Bourbon Street. Trooper Nezgoginsky was on foot patrol on Bourbon Street with his partner, Huey McCartney ("Trooper McCartney"). Trooper Nezgoginsky and Trooper McCartney received a tip regarding illegal activity occurring at 808 Bourbon Street while on the corner of Bourbon and St. Ann. The tip was from the owner of the property. The troopers were about fifteen feet away from Defendant who was sitting on the steps of the property. As they approached, Trooper Nezgoginsky noticed "no trespassing" signs were posted on the entrance outside the apartment where Defendant was sitting. The troopers, dressed in uniform, initiated a conversation with Defendant. Defendant quickly got up, pushed Trooper McCartney, and ran. Trooper Nezgoginsky grabbed Defendant by the shirt; however, Defendant broke free and continued running toward the 900 block of Bourbon. Trooper Nezgoginsky told Defendant to stop, but he continued running. Trooper Nezgoginsky deployed his taser, but the taser hooks had no contact so Defendant did not receive the full *476 effect of the taser charge. Defendant continued to run. As Defendant approached a trash can on the sidewalk, he stopped; and as Trooper Nezgoginsky advanced, Defendant pushed the approximately sixty pound trash can toward the trooper. Trooper Nezgoginsky testified the trash can hit him on the left side of his leg.
On re-direct, Trooper Nezgoginsky read his report of the trash can incident stating, "Cretian ran down Bourbon Street towards the main street and pushed the metal trash can to hit my left leg." Trooper Nezgoginsky testified he deployed his taser a second time. Again, the taser did not work. Trooper Nezgoginsky continued explaining that after Defendant got into a fighting stance, he grabbed him by the front of his shirt and forced him to the ground. As Trooper Nezgoginsky continued to give Defendant verbal commands to put his hands behind his back, Defendant attempted to stand up and started kicking at Troopers Nezgoginsky and McCartney. Trooper McCartney detonated his taser to stun Defendant and the arrest was accomplished.
Trooper McCartney, who had been a Louisiana State Trooper since September 2008, testified that as he and Trooper Nezgoginsky approached Defendant, they advised him to drop what he was holding and show his hands. Trooper McCartney asked Defendant whether he lived in the apartment upon whose steps he was sitting. Defendant did not answer, but got up aggressively and pushed Trooper McCartney in his shoulder. Defendant ran down the street, and the troopers chased him. Trooper McCartney recalled that Trooper Nezgoginsky attempted to tase Defendant twice without success. Although Trooper McCartney testified he was behind Defendant and Trooper Nezgoginsky, he stated he saw Defendant push the trash can into the path of his partner. At the end of the chase, Trooper McCartney detonated his taser and it connected. Trooper McCartney explained he stunned Defendant because Defendant, while on the ground, would not allow the troopers to handcuff him.
Molly Thomas ("Ms. Thomas"), an investigator employed by defense counsel, testified she took photographs of 800 block of Bourbon Street. Ms. Thomas stated there were no signs relating to loitering on the building. Additionally, she noted there were thirteen surveillance cameras in the area of 808 Bourbon Street. On cross-examination by the State, it was determined that Ms.
Thomas was unaware if the surveillance cameras were in place or functioning on February 22, 2016, the date of Defendant's arrest.
ERRORS PATENT
In accordance with La. C.Cr.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. A review of the record indicates two errors patent.
The first error patent is the district court erred in failing to consider Defendant's motion seeking appointment of sanity commission on the merits before granting Defendant's appeal. The statutes governing a defendant's mental capacity to proceed are set forth in La. C.Cr.P. art. 641, et seq. Louisiana Code Criminal Procedure Article 642 provides:
The defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed.
*477 Louisiana Courts recognize as an error patent a trial court's failure to comply with La. C.Cr.P. art. 642. State v. Camper , 08-0314 (La.App. 4 Cir. 10/1/08), 996 So.2d 571 and State v. Nicholas, 587 So.2d 16 (La.App. 3 Cir.1991).
At the August 23, 2016 habitual offender proceeding, Defendant's attorney mentioned to the district court his concern of the Defendant's mental capacity. During the inquiry, the following pertinent exchange occurred:
THE COURT:
I take it you can read, write and understand the English language?
THE DEFENDANT, CRETIAN:
Yes, sir.
THE COURT:
Do you understand what is going on here today?
THE DEFENDANT, CRETIAN:
Yes, sir.
THE COURT:
Do you understand the various rights that you have waived?
THE DEFENDANT, CRETIAN:
Yes, sir.
THE COURT:
Mr. Guillory, do you believe that Mr. Cretian understands the various rights that he has waived?
MR. GUILLORY:
I believe that he understands, your Honor. Although, as I have represented to the Court earlier I do have some serious concerns about his mental capacity.
THE COURT:
Do you believe that he doesn't understand what it is that I just shared with him?
MR. GUILLORY:
I believe that he understands.
THE COURT:
I ask you again, sir, is it your desire to admit that you are a triple offender in exchange for a sentence of 7 years in the Department of Corrections?
THE DEFENDANT, CRETIAN:
Yes, sir.
After the colloquy, the district court accepted the habitual offender plea, vacated the underlying sentence, and sentenced Defendant to seven years at hard labor, in conformity with the plea agreement.
On October 4, 2016, Defendant filed a written motion seeking appointment of sanity commission to examine his capacity at the time of the offense and his present capacity to proceed. Defendant, orally motioned for an appeal on January 19, 2017, and on February 22, 2017, a written motion for appeal was filed and granted the same day.
At the March 30, 2017 hearing on the motion seeking appointment of sanity commission, the district court denied the motion but did not consider the merits of the motion. The district court stated in pertinent part:
THE COURT: And I've got to be honest with you, we've done some independent research because I thought to myself, how does the Court undo what has already happened in this case? In other words, there was a trial. The question becomes whether or not he was incompetent to proceed at the time of the trial because now we're past the trial, and I can't find anything in the law book that allows me to. A, give you a competency examination at this point, and, B, more importantly, if I gave it to you, what would the remedy be? It's only about competency to proceed. We already proceeded. It would be competency to proceed to do what?
The Louisiana Supreme Court has recognized that the issue of mental capacity *478 to proceed may be raised after conviction. State v. McCoy , 14-1449, p. 115 (La. 10/19/16), 218 So.3d 535, 611 (citing State v. Clark , 367 So.2d 311, 312 (La. 1979) ).[4] In State ex rel. Seals v. State , 00-2738, p. 1 (La. 10/25/02), 831 So.2d 828, 830, the defendant's lack of mental competency claim was raised for the first time in the defendant's application for post-conviction relief filed in the trial court. In Seals , in addressing whether a retrospective determination of defendant's capacity to stand trial may be made from the evidence in the record, the Supreme Court set forth the applicable law when a defendant's mental capacity is raised and opined as follows:
At the outset, we note the longstanding precept that a defendant does not have an absolute right to the appointment of a sanity commission simply upon request. State v. Volson, 352 So.2d 1293 (La.1977). A trial judge is only required to order a mental examination of a defendant when there are reasonable grounds to doubt the defendant's mental capacity to proceed. Id. ; La.Code Crim. Proc. art. 643. It is well established that "reasonable grounds" exist where one should reasonably doubt the defendant's capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to
assist in preparing his defense. Drope v. Missouri, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) ; [ State v .] Snyder , [ 98-1078 (La. 4/14/99), 750 So.2d 832] at 851. To determine a defendant's capacity, we are first guided by La.Code Crim. Proc. arts. 642, 643, and 647. As a general matter, La.Code Crim. Proc. art. 642 allows "[t]he defendant's mental incapacity to proceed [to] be raised at any time by the defense, the district attorney, or the court." The Article additionally requires that "[w]hen the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution ... until the defendant is found to have the mental capacity to proceed." Id. Next, Article 643 provides in pertinent part, "The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed...." Last, if a defendant's mental incapacity has been properly raised, the proceedings can only continue under La.Code Crim. Proc. art. 647 which provides:
The issue of the defendant's mental capacity to proceed shall be determined by the court in a contradictory hearing. The report of the sanity commission is admissible in evidence at the hearing, and members of the sanity commission may be called as witnesses by the court, the defense, or the district attorney....
This protection, however, is not to say that every time a defendant feigns incapacity the court must order a full-blown sanity commission. In State v. Berry, 391 So.2d 406, 411 (La.1980), we firmly held that the trial court is granted great discretion in determining if a defendant should be afforded a mental examination to determine capacity.
Indeed, where a trial judge finds enough evidence to doubt a defendant's capacity, the court may order the defendant be examined by a single psychiatrist to satisfy requirements of La.Code Crim. Proc. art. 643. There is no need for a sanity commission to be appointed each time capacity of a defendant is questioned. That being said, questions regarding a defendant's capacity must be deemed by the court to be bona fide *479 and in good faith before a court will consider if there are "reasonable grounds" to doubt capacity. Where there is a bona fide question raised regarding a defendant's capacity, the failure to observe procedures to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial. Drope at 172, 95 S.Ct. 896 ; Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) ; State v. Rogers, 419 So.2d 840 (La.1982). At this point, the failure to resolve the issue of a defendant's capacity to proceed may result in nullification of the conviction and sentence under State v. Nomey, 613 So.2d 157, 161-62 (La.1993), or a nunc pro tunc hearing to determine
competency retrospectively under State v. Snyder, 98-1078 (La. 4/14/99), 750 So.2d 832.
Id. , 00-2738 at pp. 5-6, 831 So.2d at 832-33.
In State v. Cyriak , 96-661 (La.App. 3 Cir. 11/6/96), 684 So.2d 42, 46, the appellate court, as an assigned error, found the trial court's failure to consider the merits of the defendant's post-conviction motion seeking appointment of sanity commission, raised at the habitual offender proceeding, required the issue be remanded for a hearing. The reviewing court found the trial court erred in denying the defendant's motion without determining if there were reasonable grounds to doubt the defendant's mental capacity to proceed. The appellate court noted the defendant was never given an opportunity to present evidence on his mental capacity to proceed nor did the trial court take any steps to satisfy itself as to the defendant's mental capacity to proceed. The appellate court affirmed the defendant's conviction, vacated the sentence, and remanded the case to the trial court for a determination of the defendant's mental capacity to proceed.
In the case sub judice , the district court failed to comply with La. C.Cr.P. art. 642. As a result, we remand the matter to the district court to determine whether there were reasonable grounds to doubt Defendant lacked mental capacity to proceed and to warrant the appointment of a sanity commission.
The second error patent is the district court was divested of jurisdiction at the time it heard Defendant's motion seeking appointment of sanity commission. Louisiana Code Criminal Procedure Article 916 provides:
The jurisdiction of the trial court is divested and that of the appellate court attaches upon the entering of the order of appeal. Thereafter, the trial court has no jurisdiction to take any action except as otherwise provided by law and to:
(1) Extend the return day of the appeal, the time for filing assignments of error, or the time for filing per curiam comments in accordance with Articles 844 and 919.
(2) Correct an error or deficiency in the record.
(3) Correct an illegal sentence or take other appropriate action pursuant to a properly made or filed motion to reconsider sentence.
(4) Take all action concerning bail permitted by Title VIII.
(5) Furnish per curiam comments.
(6) Render an interlocutory order or a definitive judgment concerning a ministerial matter not in controversy on appeal.
(7) Impose the penalty provided by Article 844.
(8) Sentence the defendant pursuant to a conviction under the Habitual Offender Law as set forth in R.S. 15:529.1.
In light of our decision to remand this matter for hearing to determine whether *480 reasonable grounds existed to doubt Defendant lacked mental capacity pursuant to La. C.Cr.P. art. 642, we find this error harmless.
DISCUSSION
The Defendant assigns four errors which will be discussed separately.
Assignment of Error No. 1: Insufficiency of the Evidence
Defendant argues the evidence was insufficient to support his conviction of resisting arrest with force. Defendant does not contest he fled from police; rather, he challenges his conviction on the ground the State failed to prove he used "force." Defendant explains he accidentally knocked over the trash can, and had no criminal intent to harm the trooper. Defendant asserts this is corroborated by Trooper McCartney's testimony the trash can was pushed by Defendant and fell into Trooper Nezgoginsky's path.
When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court must first determine the sufficiency of the evidence. State v. George , 15-1189, p. 9 (La.App. 4 Cir. 11/9/16), 204 So.3d 704, 711 (quoting State v. Marcantel , 00-1629, p. 8 (La. 4/3/02), 815 So.2d 50, 55 ). This Court, in State v. Hickman , 15-0817, p. 9 (La. App. 4 Cir. 5/16/16), 194 So.3d 1160, 1165-1166 (quoting State v. Brown , 03-0897, p. 22 (La. 4/12/05), 907 So.2d 1, 18 ), set forth the standard for determining a claim of insufficiency of the evidence as follows:
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." State v. Neal , [20] 00-0674 (La. 6/29/01), 796 So.2d 649, 657 (citing State v. Captville , 448 So.2d 676, 678 (La.1984) ).
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." Neal , 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. Id. (citing State v. Rosiere , 488 So.2d 965, 968 (La. 1986) ).
"If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted." State v. Green , 588 So.2d 757, 758 (La.App. 4 Cir. 1991). It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Scott , 12-1603, p. 11 (La.App. 4 Cir. 12/23/13), 131 So.3d 501, 508 (citing
State v. Johnson , 619 So.2d 1102, 1109 (La.App. 4 Cir. 1993) ). Credibility determinations, as well as the weight attributed to the evidence, are soundly within the province of the fact finder. Id. (citing State v. Brumfield , 93-2404 (La.App. 4 Cir. 6/15/94), 639 So.2d 312, 316 ). Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. State v. Jones , 537 So.2d 1244, 1249 (La.App. 4 Cir. 1989). Absent internal contradiction or irreconcilable conflict with physical evidence, a single *481 eyewitness' testimony, if believed by the fact finder, is sufficient to support a factual conclusion. State v. Marshall , 04-3139, p. 9 (La. 11/29/06), 943 So.2d 362, 369.
Defendant was convicted of resisting an officer with force, a violation of La. R.S. 14:108.2 which provides in part:
A. Resisting a police officer with force or violence is any of the following when the offender has reasonable grounds to believe the victim is a police officer who is arresting, detaining, seizing property, serving process, or is otherwise acting in the performance of his official duty:
(1) Using threatening force or violence by one sought to be arrested or detained before the arresting officer can restrain him and after notice is given that he is under arrest or detention.
(2) Using threatening force or violence toward or any resistance or opposition using force or violence to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.
(3) Injuring or attempting to injure a police officer engaged in the performance of his duties as a police officer.
(4) Using or threatening force or violence toward a police officer performing any official duty.
Specific criminal intent in not an element of La. R.S. 14:108.2. See State v. Williams , 11-427, pp. 11-12 (La.App. 5 Cir. 2/28/12), 88 So.3d 1102, 1111.
As guidance, we reviewed several cases where Louisiana courts have found sufficient evidence to support a conviction of resisting arrest with force. In State v. Dorsey , 12-1553 (La.App. 4 Cir. 8/28/13), 123 So.3d 814, this Court affirmed the defendant's convictions for two counts of resisting a police officer with force. In Dorsey , police officers saw the defendant and another man exit an alleyway. When the men saw the police officers, they separated and the defendant walked quickly toward a gate. The officers identified themselves as police and ordered the defendant to stop. The defendant ignored the officers' instructions, quickened his pace, and entered the gate. One of the officers grabbed the defendant's shoulder to detain him. The defendant reached back and hit the officer in the head. As the defendant struggled with one officer, the other officer entered the gate. The defendant squared off against the officers and was tackled by the second officer. While trying to handcuff the defendant as they were on the ground, the defendant hit both officers. In State v. Turner , 51,228 (La.App. 2 Cir. 4/5/17), 217 So.3d 601, the court affirmed the defendant's conviction for the responsive verdict of attempted resisting a police officer with force or violence. In Turner , officers knocked on the defendant's dorm room and identified themselves as police officers. The defendant was suspected of domestic violence. When the defendant did not respond to the officers' knock, they had a residential advisor unlock the defendant's door. Once the officers entered the dorm suite, they again identified themselves as police officers and knocked on the defendant's bedroom door numerous times before he opened the door. The officers advised him he was under arrest and read him his rights. After placing the handcuff on one of the defendant's wrists, the defendant jerked his arm loose and refused to allow the police to handcuff him. Another officer intervened and the defendant was eventually handcuffed and arrested. Neither of the officers was injured; however the defendant was described as combative during the arrest and using force to prevent the officers from handcuffing him.
*482 In the case sub judice , both of the state troopers were dressed in uniform and Defendant was aware the officers were attempting to detain him in the performance of their duties. Both troopers stated Defendant pushed Trooper McCartney. Trooper Nezgoginsky testified Defendant shoved a trash can into his path which hit him, and Trooper McCartney recalled seeing Defendant push a trash can in Trooper Nezgoginsky's path. Both troopers testified that Defendant was combative and refused to allow the troopers to handcuff him.
Applying the Jackson standard, we find the State presented evidence beyond a reasonable doubt that Defendant committed the offense of resisting a police officer with force.
This assignment of error lacks merit.
Assignment of Error No. 2: Excessive Sentence
Defendant contends his seven year sentence is excessive. He complains his sentence should not have been enhanced under the habitual offender law as the offense involved a petty offense.
Defendant entered a plea agreement with the State to plead guilty as a third felony offender in return for a sentence of seven years at hard labor. Louisiana Code Criminal Procedure Article 881.2(A)(2) provides that "[t]he defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." This provision applies to sentences imposed in conformity with pleas entered in habitual offender proceedings. See
State v. Miller , 00-0218, pp. 16-17 (La.App. 4 Cir. 7/25/01), 792 So.2d 104, 116 and State v. Fazande , 05-901, p. 9 (La.App. 5 Cir. 3/28/06), 927 So.2d 507, 513 (citing State v. Bolton, 02-1034 (La.App. 5 Cir. 3/11/03), 844 So.2d 135, 142, writ denied, 03-1159 (La. 11/14/03), 858 So.2d 417 ); Cf. State v. Jochum, 07-0815, pp. 2-4 (La.App. 4 Cir. 4/9/08), 982 So.2d 926, 927-28. Thus, Defendant is precluded from challenging his habitual offender sentence on appeal.
This assignment of error lacks merit.
Assignment of Error No. 3: Prosecutorial Misconduct
Defendant alleges the State committed prosecutorial misconduct. Defendant argues the State wrongfully applied the habitual offender law to him-"an incompetent young man." Defendant references the district court's discussion at sentencing where the court questioned whether Defendant detrimentally relied on his sentencing exposure being only two to six years. The district court stated:
This Court asked on the Record on enumerable occasions whether or not because of the maximum possible sentence was 3 years as to whether Mr. Cretian's exposure was 2 to 6 years. The State never corrected this Court on the Record. It was only after the trial had concluded that the state informed this Court that, oops, by the way, he is a triple lifer.[5]
This Court has not addressed prosecutorial vindictiveness in the context of the filing of an habitual offender bill. We find it instructive to consider the jurisprudence from other Louisiana courts. In State v. Stewart , 27,049 (La.App. 2 Cir. 5/10/95), 656 So.2d 677, the defendant, on appeal, assigned as an error that the prosecutor acted vindictively in filing an habitual offender bill against him. The court held a defendant has the burden of proving, by a *483 preponderance of the evidence, the affirmative defense of prosecutorial vindictiveness, and a reviewing court will examine the state's actions in the context of the entire proceedings. Stewart , 27,049 at p. 4, 656 So.2d at 680 (citing U.S. v. Krezdorn, 718 F.2d 1360 (5th Cir.1983) ). The Stewart court explained:
The events in the case will create a presumption of vindictiveness if, to a reasonable mind, the filing of the habitual offender bill can be explained only by a desire to deter or punish the exercise of legal rights. See Id. ; U.S. v. Esposito, 968 F.2d 300 (3d Cir.1992). But where the government's conduct is equally attributable to legitimate reasons, a defendant must prove actual vindictiveness for a presumption will not apply. U.S. v. Esposito, supra . A mere opportunity for vindictiveness does not suffice. U.S. v. Goodwin, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) ; U.S. v. Esposito, supra .
Id. See also, State v. Wesley , 49,438, pp. 5-6 (La.App. 2 Cir. 2/26/15), 161 So.3d 1039, 1043-44, State v. Darensbourg , 06-572, p. 5 (La.App. 5 Cir. 12/27/06), 948 So.2d 1128, 1132, and State v. Orange , 02-071, p. 9 (La.App. 1 Cir. 4/11/03), 845 So.2d 570, 578 ; Cf. State v. Poche, 05-1042, p. 16 (La.App. 3 Cir. 3/1/06), 924 So.2d 1225, 1236. In Wesley , the court explained, "[t]he use of the habitual offender law alone will not create a presumption of prosecutorial vindictiveness." Id. , 49,438 at p. 6, 161 So.3d at 1044 (citing State v. Wilson, 44,586 (La.App. 2 Cir. 10/28/09), 26 So.3d 210, writ denied, 09-2655 (La. 1/28/11), 56 So.3d 973 ); See also , Darensbourg , 06-572 at p. 5, 948 So.2d at 1132. The discretion to charge a defendant under the habitual offender statute lies with the district attorney. La. C.Cr.P. art. 61 ; La. R.S. 15:529.1.[6] A defendant may be charged as an habitual offender at any time, even after conviction and sentence. La. R.S. 15:529.1(D).
Because the State had discretion to file the habitual offender bill in this case, Defendant must prove by a preponderance of the evidence actual vindictiveness. We find he fails to do so. The record indicates the first time Defendant mentioned his lack of mental capacity was at the habitual offender proceeding. Further, the State informed Defendant, starting with the first plea offer, of the possibility of being charged as a habitual offender and Defendant rejected the offer. Following, in July 2016, the State filed a "Motion in Limine to Prohibit the Defense from Referring to Possible Sentences either for the Crime or Under the Habitual Offender Statute ( La. C.E. Article 403 )." In the motion, the State prayed Defendant be prohibited from mentioning the possible sentence for the crime and under the habitual offender statute. The minute entry of July 11, 2017, indicates a hearing was held on the State's motion in limine , and the district court granted the motion.
This assignment of error lacks merit.
*484 Assignment of Error No. 4: Lack of Mental Capacity
Defendant argues he lacked the mental capacity to have been tried. In support, Defendant contends he has been recognized as being in the class of individuals with the most significant and severe disabilities by the State of Louisiana Office of Workforce Development. Defendant asserts his severe mental disabilities were apparent when he failed to accept the initial plea agreement offered by the State and his inexperienced trial attorney failed to recognize his lack of capacity.
Based upon this Court's finding that the error patent requires the case be remanded for an evidentiary hearing for the district court to determine whether reasonable grounds exist to doubt Defendant's mental capacity and to warrant the appointment of a sanity commission, we pretermit discussion of this assigned error.
CONCLUSION
For the reasons set forth below, Defendant's conviction and sentence are conditionally affirmed, and the matter is remanded to the district court for an evidentiary hearing for a determination of whether reasonable grounds exist to doubt Defendant's mental capacity and to warrant the appointment of a sanity commission.
CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED; REMANDED WITH INSTRUCTIONS.

The State charged Defendant with the prior convictions of attempted distribution of cocaine, violations of La. R.S. 14:27 and 40:967(B)(1) and distribution of cocaine, a violation of La. R.S. 40:967(B)(1).

In August 2016, Defendant filed a motion for a new trial and for post-conviction judgment of acquittal. The motions were denied as moot.

The United States Supreme Court granted certiorari in part on other grounds in McCoy v. Louisiana , --- U.S. ----, 138 S.Ct. 53, 198 L.Ed.2d 781 (2017).

The district court did not refer to the specific proceeding in which it inquired about Defendant's maximum sentencing exposure and the record before this court does not contain a transcript of a proceeding, held before sentencing, where the exchange occurred.

La. C.Cr.P. art. 61 provides:
Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute.
La. R.S. 15:529.1(D)(1)(a) provides in part:
If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state, or has been convicted under the laws of any other state, or of the United States, or of any foreign government or country, of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which the subsequent conviction was had may file an information accusing the person of a previous conviction....