Judgment rendered December 18, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,868-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JAMES ERIC PARKS                            Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 373,499

Honorable Donald Edgar Hathaway, Jr., Judge

* * * * *

OFFICES OF J. DHU THOMPSON, APLC        Counsel for Appellant
By:  J. Dhu Thompson

JAMES E. STEWART, SR.                    Counsel for Appellee
District Attorney

JASON WAYNE WALTMAN
REBECCA ARMAND EDWARDS
Assistant District Attorneys

* * * * *

Before THOMPSON, ROBINSON, and HUNTER, JJ.

**ROBINSON, J.**

On August 10, 2020, James Eric Parks ("Parks") was charged with aggravated flight from an officer, operating a vehicle while intoxicated (third offense), and simple criminal damage to property. The trial was continued multiple times and was ultimately set for December 6, 2021. The State filed an amended bill on the same day charging only one count of aggravated flight from an officer, and Parks entered a plea agreement in which he waived arraignment on the amended bill and entered a guilty plea without sentencing. Sentencing was also continued and deferred multiple times until May 5, 2022. Parks failed to appear and a bench warrant without bond was issued for his arrest. He was arrested on the bench warrant June 7, 2022.

On June 15, 2022, a motion to set new bond was filed on Parks' behalf by Kimberly Free ("Free"), Parks' girlfriend, in which she claimed that Parks was misrepresented in the "sentencing phase." Sentencing was again deferred and reset for June 27, 2022. Parks was sentenced to five years at hard labor with credit for time served. Free filed a motion to reconsider sentence on Parks' behalf on July 18, 2022, which was denied ex parte.[1]

Parks, through new counsel, filed a motion for an out-of-time appeal on June 27, 2023. Per the trial court's instruction, Parks filed an application for post-conviction relief seeking an out-of-time appeal on October 27, 2023, which was granted. For the following reasons, Parks' conviction and sentence are affirmed.

---

[1] Free is not a licensed attorney but filed both the motion to set new bond and motion to reconsider sentence "on behalf of" Parks. No hearings were conducted for either motion. The ex parte denial of the motion to reconsider sentence was by stamp on the proposed order that read, "On the showing made, the requested relief cannot be granted."

**FACTS AND PROCEDURAL HISTORY**

On January 22, 2020, Parks was involved in an incident in which he fled from officers following theft of alcohol from a store. He led them on a car chase, left the roadway ignoring multiple traffic signals, and caused property damage. Parks was arrested and later charged on August 10, 2020, with aggravated flight from an officer, operating a vehicle while intoxicated (third offense), and simple criminal damage to property.

Parks' attorney, Dhu Thompson ("Thompson"), filed a motion for continuance on January 27, 2021, for the hearing set for February 4, 2021, due to Parks' new job training. The matter was set for trial on July 12, 2021, then reset for November 2, 2021. Another motion for continuance was filed on the November 2 trial date, due to Parks' additional job training, and trial was reset for December 6, 2021. The State filed an amended bill on December 6, 2021, charging only one count of aggravated flight from an officer, and Parks entered a plea agreement in which he waived arraignment on the amended bill and entered a guilty plea with the acknowledgement that the sentencing range for the charge was zero to five years. Parks was informed of his *Boykin* rights when entering his plea, responding that he understood the sentencing range, the waiver of his rights to a trial and conviction appeal, and affirming that he was not coerced into the plea.

Sentencing was set for January 18, 2022, but Parks filed a motion for continuance on the grounds that he had just begun an inpatient rehab program. Parks waived time delays for sentencing in court on February 23, 2022, and it was deferred until March 28, 2022. Parks waived delays again on March 28, 2022, and sentencing was reset for April 26, 2022. Sentencing

2

was deferred again to May 5, 2022, but Parks failed to appear. A bench warrant without bond was issued and Parks was arrested on June 7, 2022.

Free filed the motion to set new bond on Parks' behalf on June 15, 2022, in which she represented that Parks had actually been at the courthouse on May 5, 2022, and had met with counsel. However, since he had believed he would only receive probation, he left after being informed that the sentence would be 3½ to 5 years. Free alleged that Parks was misrepresented in the sentencing phase. Free requested that Parks be released on bond or his own recognizance pending sentencing since he was gainfully employed and wanted the opportunity to get his affairs in order. She also represented that Parks had multiple health issues that required treatment, though none were related to a brain injury or his mental capacity.

Sentencing was again deferred and reset for June 27, 2022. At the hearing, Thompson filed into the record a certification showing Parks' completion of anger management class and a letter reflecting his participation in the program. Thompson called Free and Russell Drew ("Drew"), Parks' stepfather, to testify on behalf of Parks, as well as Parks himself. Free claimed that Parks was remorseful, noting that he participated in rehab and private counseling, as well as classes in defensive driving and anger management. She referred to him being the only "bread winner" in their family and stated that he was gainfully employed. Drew testified that at one point, Parks had been a good worker and made good money, but that he had become addicted to gambling and drinking. He stated his belief that Parks' drinking combined with past head concussions from stockcar racing had altered Parks' perceptions and caused him to act out and get in trouble. Drew claimed that Parks' failure to appear at the May 5, 2022, sentencing

3

hearing was because he had gotten "confused by the plea offers that seemed to be changing by the minute, and he left court, and he left town." Drew stated that Parks had a job waiting for him in Texas that he had gotten after leaving town following the scheduled sentencing. Parks requested leniency from the court by expressing his remorse, reiterating that he had gone through multiple classes and rehab, and stating that he had a good job.

Thompson asked the court to recommend Parks for substance abuse and reentry programs in light of the nature of the crime, his medical conditions, the programs he had already completed, his ability to work, and because he had a job waiting for him. He noted Parks' remorse, resources, family support, and employment, for the court's consideration. He requested that Parks' failure to appear at sentencing be considered as a contempt charge in lieu of additional time and recommended a sentence of 18 months at hard labor with credit for time served.

The trial court noted that it had originally been prepared to consider Parks' participation in all the programs, but given that Parks removed his ankle monitoring device and left the state with no intention to return, it found that his behavior had not changed. The court reviewed the facts of the offense, noting that Parks "drove at a high rate of speed through residential and commercial neighborhoods, colliding with officers' vehicles." The court considered the aggravating and mitigating factors of La. C. Cr. P. art. 894.1(B), noting in particular that Parks had knowingly created a risk of death or great bodily harm to more than one person, and finding no mitigating factors.

Parks was sentenced to five years at hard labor with credit for time served. Free filed a motion to reconsider sentence on Parks' behalf on July

4

18, 2022, which was denied. The court stated that the offense would be designated a crime of violence and recommended Parks for any programs for which he would be eligible, including substance abuse and reentry.

Parks, through new counsel, filed a motion for an out-of-time appeal on June 27, 2023. Per the trial court's instruction, Parks filed an application for post-conviction relief seeking an out-of-time appeal on October 27, 2023, which was granted.

## DISCUSSION

### *Ineffective Assistance of Counsel*

Parks argues that his trial counsel's failure to investigate and introduce mitigating evidence regarding his past head trauma at the time of the plea and sentencing constitutes ineffective assistance of counsel in violation of his constitutional rights under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution.

Parks refers to Drew's testimony that Parks sustained past head concussions from stockcar racing, he had fallen into a period of gambling and drinking, and the combination of the injuries and drinking caused him to get into trouble with the law. He also specifically refers to Drew's testimony that the reason that Parks had left the courthouse immediately before the sentencing hearing was that he had become confused by the changing plea offers. Parks claims that even though he had undergone certain programs, he was still unable to fully comprehend his situation due to the long-term effects of the previous concussions.

Parks asserts that Thompson failed to investigate his medical conditions and/or introduce any evidence or argument regarding the effects of the head injuries during sentencing to support mitigation, only vaguely

5

referencing his "medical conditions" when requesting a reduced sentence. He alleges that Thompson's failure meets the standard for claims of ineffective assistance of counsel as set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Parks also claims that he did not receive effective assistance of counsel during plea negotiations because Thompson failed to advise him of his new plea offer and he never negotiated a sentence of probation. He claims that his confusion by the plea offer and resulting flight from the court supported that he was surprised by the new plea offer.

The State argues that Parks fails to satisfy the burden of the *Strickland* test to prevail on his ineffective assistance of counsel claims. It claims that there is no competent evidence that Parks suffered head trauma or any long-term effects therefrom; rather, there is only speculation through an unsubstantiated statement by a family member that the combination of alleged concussions and drinking somehow altered Parks' cognitive abilities. As a result, Thompson would have no reasonable indication to further investigate Parks' medical issues and Thompson's performance would not be deficient.

The State also points out that the trial court heard Drew's reference to Parks' alleged head trauma, but did not find it to be persuasive to justify a lesser sentence. The trial court explained its sentencing considerations, including Parks' fleeing from court despite his participation in certain programs, his noncompliance with monitoring, and the severity of his crimes. Parks does not show that any further investigation from Thompson would have had any effect on his sentence.

6

The State also asserts that the record is sufficient in this case to resolve and dispose of Parks' claims of ineffective assistance of counsel on appeal. A claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than by appeal because it creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. *State ex rel. Bailey v. City of West Monroe*, 418 So. 2d 570 (La. 1982); *State v. Davis*, 52,517 (La. App. 2 Cir. 5/22/19), 273 So. 3d 670, *writ denied*, 19-00928 (La. 11/25/19), 283 So. 3d 496; *State v. Williams*, 33,581 (La. App. 2 Cir. 6/21/00), 764 So. 2d 1164; *State v. McGee*, 18-1052 (La. 2/25/19), 264 So. 3d 445, *writ denied*, 19-00761 (La. 11/19/19), 282 So. 3d 1066; *State v. Jackson*, 52,606 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1217, *writs denied*, 19-00699 (La. 10/15/19), 280 So. 3d 560 and 19-00797 (La. 1/28/20), 291 So. 3d 1056. However, where the record is sufficient, such claims may be resolved on appeal to serve the interests of judicial economy. *Jackson*, *supra*; *State v. Nixon*, 51,319 (La. App. 2 Cir. 5/19/17), 222 So. 3d 123, *writs denied*, 17-0966 (La. 4/27/18), 239 So. 3d 836, 18-0591 (La. 2/25/19), 266 So. 3d 289, and 18-1631 (La. 2/25/19), 266 So. 3d 293; *State v. Smith*, 49,356 (La. App. 2 Cir. 11/19/14), 152 So. 3d 218, *writ denied*, 14-2695 (La. 10/23/15), 179 So. 3d 597; *Davis*, *supra*. The burden of proof for an ineffective assistance claim is set forth in *Strickland*, *supra*.

In support of his claim of ineffective assistance of counsel, Parks refers to testimony by Drew, his stepfather, and Free, his girlfriend, regarding his alleged past head trauma and resulting confusion of the plea and sentencing process. Aside from this testimony, the record indicates that Parks participated in multiple self-help programs, including the New Day Recovery program. Free testified that Parks admitted himself into, and

7

completed, the 28-day inpatient rehabilitation program, which was followed by a 12-week intensive outpatient program. She also testified that Parks participated in a defensive driving course, anger management, and private counseling, and he goes to AA meetings regularly. Pleadings by both Thompson and Free, and Parks' own testimony, indicated Parks was gainfully employed. In fact, Parks was granted multiple continuances related to his employment. Further, the record provides sufficient insight as to Thompson's court appearances, including Parks being adequately informed of his Boykin rights and what arguments were made for his defense. We find that the record is sufficient to resolve Parks' claim of Thompson's ineffective assistance of counsel on appeal.

In *Strickland*, *supra*, the United States Supreme Court established a two-part test for review of a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction. First, the defendant must show that counsel's performance was deficient. *Id.* Counsel's performance is deficient when it falls below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases as evaluated from counsel's perspective at the time of the occurrence. *Id.* Second, the defendant must show that he was prejudiced by the deficient performance, meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id.*; *State v. Zeigler*, 55,099 (La. App. 2 Cir. 6/28/23), 367 So. 3d 918; *Jackson*, *supra*. This refers to a substantial, not simply conceivable, likelihood of a different result. *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011). While both prongs must be satisfied to

prevail on an ineffective assistance of counsel claim, the court need not address both prongs when a defendant fails to satisfy one prong of *Strickland*. *State v. Chatman*, 21-1356 (La. App. 1 Cir. 6/29/22), 344 So. 3d 131; *State v. Eason*, 19-0614 (La. App. 1 Cir. 12/27/19), 293 So. 3d 61.

The Sixth Amendment provides that a defendant has the guaranteed right to effective assistance of counsel at all critical stages of criminal proceedings. *Montejo v. Louisiana*, 556 U.S. 778, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009). Sentencing is one such stage. *Missouri v. Frye*, 566 U.S. 134, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012). The entry of a guilty plea is also a critical stage. *Hamilton v. Alabama*, 368 U.S. 52, 82 S. Ct. 157, 7 L. Ed. 2d 114 (1961); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972). Further, in *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), the United States Supreme Court established that the two-part test of *Strickland* applied during plea negotiations. Anything less than representation by effective counsel at the plea negotiation stage could deny the defendant his constitutionally guaranteed rights "at the only stage when legal aid and advice could help him." *Massiah v. United States*, 377 U.S. 201, 204, 84 S. Ct. 1199, 1202, 12 L. Ed. 2d 246 (1964).

In assessing whether a defendant shows deficient performance, the "reviewing court must give great deference to the trial counsel's judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment." *Zeigler*, *supra*; *State v. Robertson*, 53,970 (La. App. 2 Cir. 6/30/21), 322 So. 3d 937. General statements and conclusory charges do not suffice to establish ineffective assistance of counsel. *State v. Grant*, 41,745 (La. App. 2 Cir. 4/4/07), 954 So. 2d 823,

*writ denied*, 07-1193 (La. 12/7/07), 969 So. 3d 629. Counsel has a duty to make a reasonable investigation, and a decision not to investigate must be assessed for reasonableness under the circumstances. *State v. Tyson*, 53,724 (La. App. 2 Cir. 6/23/21), 321 So. 3d 1134, *writ denied*, 21-0186 (La. 1/26/22), 331 So. 3d 901. Counsel's investigative actions and choices may be influenced by information and decisions from the defendant and, under the circumstances of a case, might diminish or eliminate the need for further investigation. *Id.*

As discussed hereinabove, the record is sufficient to resolve Parks' claim of ineffective assistance of counsel on appeal. In particular, the record is sufficient to determine whether Thompson had a duty to make a reasonable investigation into Parks' mental capacity to knowingly and voluntarily make a guilty plea.

It is apparent that Parks and/or his family had been in communication with Thompson from the onset of the charges filed against Parks. First, Thompson filed multiple continuances on Parks' behalf due to circumstances involving Parks' personal obligations that conflicted with scheduling. Two motions for continuance were filed prior to the guilty plea hearing based on Parks' need to be at job training. Following the guilty plea hearing but prior to sentencing, an additional motion for continuance was filed because Parks had begun an inpatient rehabilitation program. Free also filed multiple pleadings on Parks' behalf prior to trial, while Thompson still represented Parks. Thompson also arranged for Free, Drew, and Parks to testify at trial.

At the plea hearing, the trial court adequately informed Parks of his *Boykin* rights in advance of his guilty plea. Parks repeatedly responded affirmatively to the court's questions as to whether the factual basis of the

10

plea was correct and whether he understood his waiver of rights and the sentencing range, and he affirmed that he was not coerced into a plea – all in the presence of Thompson. In particular, Parks specifically recognized the sentencing range for the crime charged of up to five years. Parks failed to appear for the sentencing hearing and a warrant was issued for his arrest. Following Parks' arrest, but prior to the sentencing hearing, Free filed a pleading on Parks' behalf explaining that he had left after being informed that his sentence would be 3½ to 5 years when he believed he would only receive probation, and alleging he had been "misrepresented in the sentencing phase." Notably, despite referencing some health issues, Free's pleading contained no allegations concerning Parks' mental capacity.

Thompson continued to represent Parks during the sentencing hearing. It was not until then that Parks' mental capacity was allegedly called into question by Drew's testimony that Parks' "drinking and I assume combined with the past head concussions from stockcar racing began to alter his perceptions." Parks' testimony consisted of a statement expressing remorse for his actions, confirming he had a job waiting for him in Texas upon release, and stating that he "really just had to hit rock bottom just to really see my actions and what I've done." Thompson presented an argument for a lenient sentence for Parks, requesting that his fleeing from court be considered a lesser charge of contempt in lieu of additional sentencing for the underlying charge, and focusing on Parks' completion of programs since his guilty plea, his claimed remorse, his family support, and his employment.

Thompson regularly communicated with Parks and his family members during his representation of Parks. The family provided Thompson with documentation and even filed pleadings on Parks' behalf.

11

There was ample opportunity for Parks and/or his family to raise any question of mental capacity, yet they failed to do so. Further, Thompson had documentation of Parks' participation in multiple programs and evidence of his employability. The question of Parks' capacity to make a knowing and voluntary plea was not raised prior to or during the guilty plea hearing or the sentencing hearing, but only after Parks received a sentence he opposed. It was not until the sentencing hearing that Drew referred to Parks' alleged concussions and the possibility they may have "altered his perceptions." However, Parks' testimony that he "had to hit rock bottom just to really see my actions and what I've done" indicates that he was fully aware of his actions and contradicts the assertion that he lacked capacity.

The record does not indicate that Thompson had reasonable grounds to believe Parks lacked the capacity to make a knowing and voluntary plea, or even to investigate. It was more than reasonable under these circumstances that Thompson may not have further investigated Parks' mental capacity. Parks was also adequately informed of the sentencing range prior to entering his guilty plea and he was ultimately sentenced within range. In addition, he had benefited from negotiations resulting in the removal of the original charges of operating a vehicle while intoxicated (third offense) and simple damage to property, so that he was only subjected to penalties for the charge of aggravated flight from an officer. Therefore, Parks failed to show that Thompson's performance was deficient.

Parks failed to satisfy the first prong of the *Strickland* test. Although not necessary, since Parks did not satisfy the first prong, we will briefly address the second prong, that the defendant must show he was prejudiced by the deficient performance of counsel. There must be a substantial, not

12

simply conceivable, likelihood of a different result. *Cullen*, *supra*. Parks is required to show a reasonable probability that, but for Thompson's deficient performance of failing to investigate and introduce the issue of capacity at sentencing, his sentence would have been different. *Chatman*, *supra*; *State v. Dunnagan*, 16-0187 (La. App. 1 Cir. 9/20/16), 277 So. 3d 378.

A defendant does not have an absolute right to the appointment of a sanity commission simply upon request. *State v. Cretian*, 17-0777 (La. App. 4 Cir. 1/24/18), 238 So. 3d 473, *citing State v. Volson*, 352 So. 2d (La. 1977). A trial judge is only required to order a mental examination of defendant when there are reasonable grounds to doubt the defendant's mental capacity to proceed. *Id.* "Reasonable grounds" exist where one should reasonably doubt the defendant's capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense. *Id.* Questions regarding a defendant's capacity must be deemed by the court to be bona fide and in good faith before a court will consider if there are "reasonable grounds" to doubt capacity. *Cretian*, *supra*.

Parks only makes the general assertion that had Thompson fully investigated the alleged head injuries and presented evidence of their effect on his behavior, there is a reasonable probability that the outcome of the proceeding would have been different. There is no evidence that Parks actually incurred any head injuries or that he lacked any capacity as a result thereof. There is actually evidence of the opposite – that Parks *did* have sufficient mental capacity. There are no reasonable grounds to believe that the failure to further investigate the issue prejudiced Parks, especially given that he and his family had ample opportunity throughout Thompson's

13

representation to bring the issue to Thompson's and the court's attention.

***Knowing and Voluntary Plea***

Parks also claims that his plea agreement was not made knowingly and voluntarily due to his reduced cognitive function from his previous concussions, outside the context of a claim for ineffective assistance of counsel. He claims that his history of medical issues was apparent in the record, and was to such an extent that he was unable to waive his due process rights.

The State points out that there were no more plea negotiations at the time of sentencing because Parks had already accepted his plea offer and entered the guilty plea, with the information regarding the sentencing range. Therefore, his confusion *after* he accepted the plea deal would have no impact on whether his plea was knowing and voluntary.

Where the record establishes that the defendant was informed of and waived his rights to trial by jury, to confront his accusers, and against self-incrimination, the burden shifts to the defendant to prove his guilty plea was involuntary. *State v. Welsh*, 50,567 (La. App. 2 Cir. 5/18/16), 196 So. 3d 1; *State v. Wooten*, 49,710 (La. App. 2 Cir. 4/15/15), 164 So. 3d 937; *State v. Martin*, 48,045 (La. App. 2 Cir. 5/15/13), 115 So. 3d 750. Parks was adequately informed of and waived his *Boykin* rights. The court informed Parks of his sentencing range and he responded that he understood and it was his intent to plead guilty. Parks only refers to self-serving testimony regarding a possible, speculative mental impairment, without offering any medical evidence or other information to support the claim. The remainder of the record and even Parks' own testimony supports that there were no grounds to doubt his capacity in regard to his ability to make a knowing and

14

voluntary plea. Therefore, there is no basis for Parks' withdrawal of the guilty plea.

## CONCLUSION

For the reasons stated hereinabove, Parks' guilty plea and sentence are hereby AFFIRMED.

**AFFIRMED.**